3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

Nathan R. Ring, Esq.
Nevada State Bar No. 12078
**STRANCH, JENNINGS & GARVEY PLLC**
3100 W. Charleston Blvd., Ste. 208
Las Vegas, Nevada 89102
(725) 235-9750
nring@stranchlaw.com

Grayson Wells*
John C. Roberts*
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
(615) 254-8801
gwells@stranchlaw.com
jroberts@stranchlaw.com

*Attorney for Plaintiffs and the Proposed Class*

**Pro Hac Vice forthcoming*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| KIM WARNER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BOYD GAMING CORPORATION,<br><br>Defendant. | Case No.:<br><br>**PROPOSED CLASS ACTION COMPLAINT**<br><br>**JURY DEMAND** |

Plaintiff, Kim Warner ("Plaintiff"), on behalf of herself and all others similarly situated, states as follows for their proposed class action complaint against Defendant, Boyd Gaming Corporation, ("Boyd Gaming Corp." or "Defendant"):

/ / /

/ / /

/ / /

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

## NATURE OF THE ACTION

1. This Class Action arises out of the recent data security incident and data breach that was perpetrated against the Defendant that involved Plaintiff's and the proposed Class Members personally identifying information.

2. Defendant is a multi-billion-dollar casino entertainment company based in Las Vegas, Nevada, and is "one of the largest and most respected casino entertainment companies in the Unites States" with "28 gaming properties in ten states"[1]

3. On or around September 6, 2025, Defendant experienced a data breach that resulted in an unauthorized disclosure, exfiltration, and theft of highly personal information in the possession and custody and/or control of Defendant (the "Data Breach").[2] The Plaintiff and proposed Class Members' information impacted includes their personally identifying information ("PII").

4. The PII compromised in the Data Breach included, at the minimum, Plaintiff's and Class Members' name, date of birth, and Social Security number.[3]

5. Upon information and belief, and unauthorized actor had unfettered access and acquired Plaintiff's and Class Members' PII from the Defendant's systems from September 5, 2025 to September 7, 2025.[4]

---

[1] *About Boyd*, Boyd Gaming Corp., https://www.boydgaming.com/company/about-us?_gl=1*1kfhphg*_gcl_au*MTk2MzQ2NzMzNC4xNzE4NjI3MTU4 (last visited Oct. 1, 2025)

[2] Attached Exhibit A is Plaintiff's Notice of Data Breach Letter.

[3] *See id.*

[4] *See id.*

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

6. Defendant became aware of the Data Breach on September 6, 2025, but waited until September 24, 2025, to inform the victims of the Data breach via letter ("Notice Letter").

7. Given the Defendant's failure in protecting Plaintiff's and Class Members PII, it is likely that Defendant's cybersecurity program as a whole is severely inadequate in comparison to the measures it is legally obligated to provide to individuals for whom it collects PII, thus leaving them exposed to the Data Breach that indeed came into fruition.

8. Defendant's failure in even the most basic requirements of cybersecurity, it is likely that Defendant's cybersecurity program as a whole is severely inadequate in comparison to the measures it is legally obligated to provide to individuals for whom it collects PII, thus leaving them exposed to the Data Breach that indeed came into fruition.

9. Defendant has intentionally obfuscated the nature of the breach and the threat it posted—how the breach happened, and why Defendant continues to delay notifying victims the full extent that hackers had gained access to the Plaintiff and Class Members' PII.

10. Defendant has delayed informing Class Members even though Plaintiff and Class Members had their most PII accessed, exfiltrated, and stolen, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

11. As a result of the Data Breach, Plaintiff and Class Members, suffered concrete injuries in fact including, but not limited to: (i) invasion of privacy; (ii) theft of their PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to their PII, which: (a) remains unencrypted and available for unauthorized third

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

12. The Data Breach was a direct result of Defendant's failure to implement adequate and reasonable cyber-security procedures and protocols necessary to protect Plaintiff's and Class Members' PII from a foreseeable and preventable cyber-attack.

13. Defendant maintained, used, and shared the PII in a reckless manner. In particular, the PII was used and transmitted by Defendant in a condition vulnerable to cyberattacks. Upon information and belief, the mechanism of the cyberattack and potential for improper disclosure of Plaintiff's and Class Members' PII was a known risk to Defendant, and thus, Defendant were on notice that failing to take steps necessary to secure the PII from those risks left that property in a dangerous condition.

14. Defendant disregarded the rights of Plaintiff and Class Members by, *inter alia*, intentionally, willfully, recklessly, or negligently failing to take adequate and reasonable measures to ensure its data systems were protected against unauthorized intrusions; failing to take standard and reasonably available steps to prevent the Data Breach; and failing to provide Plaintiff and Class Members prompt and accurate notice of the Data Breach.

15. Plaintiff's and Class Members' identities are now at risk because of Defendant's negligent conduct because the PII that Defendant collected and maintained has been accessed and acquired by data thieves.

16. As a result of the Data Breach, Plaintiff and Class Members have been exposed to a heightened and imminent risk of fraud and identity theft. Plaintiff and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft.

17. Plaintiff and Class Members may also incur out of pocket costs, including to purchase credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

18. Indeed, Defendant has made clear that Plaintiff and the putative Class Members should spent time monitoring accounts and attempting to prevent the imminent harm that they now face when Defendant instructed them to remain vigilant and enroll in credit monitoring services, all the while offering only the legally minimum credit monitoring services that are woefully inadequate to protect Plaintiff from the harms she must now face as a result of the disclosure of her PII, including her Social Security number.

19. Plaintiff brings this class action lawsuit on behalf all those similarly situated to address Defendant's inadequate safeguarding of Class Members' PII that it collected and maintained, and for failing to provide timely and adequate notice to Plaintiff and other Class Members that their information had been subject to the unauthorized access by an unknown third party and precisely what specific type of information was accessed.

20. Through this Complaint, Plaintiff seeks to remedy these harms on behalf of themselves and all similarly situated individuals whose PII was accessed during the Data Breach.

21. Plaintiff and Class Members have a continuing interest in ensuring that their information is and remains safe because Defendant still has possession of her immutable information, thus entitling Plaintiff and the Class to injunctive and other equitable relief.

**PARTIES**

22. Plaintiff Kim Warner is a natural person and citizen of Henderson, Nevada where she intends to remain.

23. Defendant is a corporation with its principal place of business located at 6455 S Rainbow Blvd., Las Vegas, Nevada 89118.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG STRANCH, JENNINGS & GARVEY PLLC
725-235-9750
lasvegas@stranchlaw.com

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

## JURISDICTION AND VENUE

24. The Court has general subject matter jurisdiction over this civil action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because the amount in controversy is easily more than $5,000,000 and minimal diversity exists. Specifically, the Data Breach affected tens of thousands of people with damages including reimbursement for invasions of privacy, out-of-pocket expenses, financial losses from time spent responding to the Data Breach, and the cost of at least seven years of credit monitoring and identity theft protection services. Moreover, minimal diversity exists because, upon information and belief, some proposed class members are citizens of other states than Boyd Gaming Corp.

25. This Court has personal jurisdiction over Defendant because it was incorporated in this State and its headquarters is in this State.

26. Venue is proper in this Court because Plaintiff resides in this District and a substantial portion of the events giving rise to this Action occurred in this District.

## STATEMENT OF FACTS

***Defendant's Business***

27. Defendant is a multi-billion-dollar casino entertainment company based in Las Vegas, Nevada, and with "28 gaming properties in ten states."[5]

28. Plaintiff is a former employee of Boyd Gaming corporation.

29. As a condition of receiving employment or services from Boyd, employees and customers were required to disclose their PII to Defendant, including but not limited to, their names

---

[5] BOYD GAMING CORP., *supra* note 1.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

and Social Security numbers. Defendant used that PII to facilitate its operations and required Plaintiff to provide that PII to obtain employment.

30. Upon information and belief, in collecting and maintaining the PII of Plaintiff and Class Members, Defendant agreed it would safeguard the data in accordance with state law, and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their PII.

31. Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII. Plaintiff and Class Members relied on Defendant to keep their PII confidential and securely maintained, and to make only authorized disclosures of this information.

32. On information and belief, Defendant has not implemented reasonably cybersecurity safeguards or policies to protect its Plaintiff's and Class members' PII or supervised its IT or data security agents and employees to prevent, detect, and stop breaches of its systems. As a result, Defendant leaves significant vulnerabilities in its systems for cybercriminals to exploit and gain access to Plaintiff's and Class members' PII.

***The Data Breach***

33. Plaintiff and Class Members are current and former employees/customers whom Defendant obtained and retained the PII of.

34. On information and belief, Defendant collects and maintains consumers and others' PII in its computer systems. As a condition of receiving services or employment from Defendant, Class Members were required to provide Defendant with their PII and in return, and they reasonably expected that they would safeguard their highly sensitive and confidential information. The PII entrusted to Defendant by the Class includes names, date of birth, and Social Security number.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

35. In collecting and maintaining PII, Defendant implicitly agrees that it will safeguard the data using reasonable means according to state and federal law.

36. Upon information and belief, on or around September 5, 2025 to September 7, 2025, Defendant experienced a Data Breach when unauthorized cybercriminals accessed Defendant's IT Network and exfiltrated sensitive PII belonging to Plaintiff and Class Members.[6] In other words, Defendant's cyber and data security systems were so completely inadequate that it allowed cybercriminals to obtain files containing a treasure trove of thousands of its people's highly sensitive PII.

37. Through its inadequate security practices, Defendant exposed Plaintiff's and the Class's PII for theft and sale on the dark web.

38. On September 24, 2025, Defendant sent Notice Letters to inform the victims of the Data Breach and what particular information had been compromised.

39. Despite Defendant's intentional opacity about the root cause of this incident, several facts may be gleaned from the reported news, including: a) that this Data Breach was the work of cybercriminals; b) that the cybercriminals first infiltrated Defendant's networks and systems, and downloaded data from the networks and systems (aka exfiltrated data, or in layperson's terms "stolen" data; and c) that once inside Defendant's networks and systems, the cybercriminals targeted information including Plaintiff and Class Members' PII for download and theft and were able to maintain that access for day after Defendant discovered the hack.

40. Despite its duties and alleged commitments to safeguard PII, Defendant did not in fact follow industry standard practices in securing people's PII, as evidenced by the Data Breach.

---

[6] Exhibit A.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

41. Cybercriminals need not harvest a person's Social Security number or financial account information in order to commit identity fraud or misuse Plaintiff and the Class's PII. Cybercriminals can cross-reference the data stolen from the Data Breach and combine with other sources to create "Fullz" packages, which can then be used to commit fraudulent account activity on Plaintiff and the Class's financial accounts.

42. Given the Defendant's failure in even the most basic requirements of cybersecurity, it is likely that Defendant's cybersecurity program as a whole is severely inadequate in comparison to the measures it is legally obligated to provide to individuals for whom it collects Personal Information, thus leaving them exposed to the Data Breach that indeed came into fruition.

43. Defendant has obligations created by the FTC Act, contract, common law, and industry standards to keep Plaintiff and Class Members' PII confidential and to protect it from unauthorized access and disclosure.

44. Defendant did not use reasonable security procedures and practices appropriate to the nature of the sensitive information they were maintaining for Plaintiff and Class Members, causing the exposure of PII, such as encrypting the information or deleting it when it is no longer needed.

45. Defendant breached their obligations to Plaintiff and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. Defendant's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

a. Failing to maintain an adequate data security system to reduce the risk of data breaches;

b. Failing to adequately protect Plaintiff and Class Members' PII;

c. Failing to properly monitor its own data security systems for existing

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

intrusions, including through the use of EDR, XDR, DLP, and SIEM tools;

d. Failing to train its employees in the proper handling of emails containing the means by which the cyberattacks were able to first access Defendant's networks, and to maintain adequate email security practices;

e. Failing to put into place proper procedures, software settings, and data security software protections to adequately protect against a blunt force intrusion;

f. Failing to comply with FTC guidelines for cybersecurity, in violation of Section 5 of the FTC Act;

g. Failing to adhere to industry standards for cybersecurity.

46. The attacker accessed and acquired files containing unencrypted PII of Plaintiff and Class Members. Plaintiff's and Class Members' PII was accessed and stolen in the Data Breach.

47. Plaintiff further believes that their PII and that of Class Members was subsequently sold on the dark web following the Data Breach, as that is the *modus operandi* of cybercriminals that commit cyber-attacks of this type.

48. As a result of the Data Breach, Plaintiff and Class Members now face an increased risk of fraud and identity theft. In addition, Class Members also lost the benefit of the bargain they made with Defendant.

49. Plaintiff and Class Members have an interest in ensuring that their PII, which is believed to remain in the possession of Defendant, is protected from further breaches.

50. To date, Defendant has done nothing to provide Plaintiff and the Class Members with relief for the damage they have suffered because of the Data Breach. Defendant has merely offered Plaintiff and Class Members complimentary credit monitoring for two years, despite the

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

fact that experts recommend at least seven years.[7] But this does not compensate them for damage incurred and time spent dealing with the Data Breach. Signing up for this service requires Plaintiff and Class Members to forfeit time that could otherwise be spent making money or enjoying life.

***The Data Breach Was a Foreseeable Risk of which Defendant Was on Notice.***

51. Plaintiff and Class Members value their PII, as in today's electronic-centric world, their PII is required for numerous activities, such as new registrations to websites, or opening a new bank account, as well as signing up for special deals.

52. The PII of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, PII can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[8] Experian reports that a stolen credit or debit card number can

[7] Chi Chi Wu, *Essentials About Credit reporting: Consumer Debt Advice form NCLC*, NAT'L CONSUMER L. CTR. (July, 6, 2018), https://library.nclc.org/article/essentials-about-credit-reporting-consumer-debt-advice-nclc (explaining how most negative information stays on your credit report for seven years).

[8] Anita George, *Your Personal Data Is for Sale On the Dark Web. Here's How Much It Costs*, DIGITAL TRENDS (Oct. 16, 2019), https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

sell for $5 to $110 on the dark web.[9] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[10]

53. Based on the foregoing, the information compromised in the Data Breach is significantly more valuable than the loss of, for example, credit card information in a retailer data breach because, there, victims can cancel or close credit and debit card accounts.

54. This data demands a much higher price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information…[is] worth more than 10x on the black market."[11]

55. Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

56. Individuals, like Plaintiff and Class members, are particularly concerned with protecting the privacy of their Social Security numbers, which are the key to stealing any person's identity and is likened to accessing your DNA for hackers' purposes.

57. Data Breach victims suffer long-term consequences when their social security numbers are taken and used by hackers. Even if they know their social security numbers are being

---

[9] Brian Stack, *Here's How Much Your Personal Information Is Selling for on the Dark Web*, EXPERIAN (Dec. 6, 2017), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web.

[10] *For Sale in the Dark*, VPNOverview, https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark (last visited Oct. 1, 2025).

[11] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10X Price of Stolen Credit Card Numbers*, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

misused, Plaintiff and Class Members cannot obtain new numbers unless they become a victim of social security number misuse.

58. The Social Security Administration has warned that "a new number probably won't solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So, using a new number won't guarantee you a fresh start. This is especially true if your other PII, such as your name and address, remains the same."[12]

59. Further, the standard operating procedure for cybercriminals is to use some data, like the PII here, to access "Fullz packages" of that person to gain access to the full suite of additional PII that those cybercriminals have access through other means. Using this technique, identity thieves piece together full pictures of victim's information to perpetrate even more types of attacks.

60. With "Fullz" packages, cybercriminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy to assemble complete dossiers on individuals.

61. The development of "Fullz" packages means here that the stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and Class Members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain

---

[12] *Identity Theft and Your Social Security Number*, Pub. No. 05-10064, SOCIAL SEC. ADMIN. (July 2021), https://www.ssa.gov/pubs/EN-05-10064.pdf.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

information such as emails, phone numbers, or credit card numbers may not be included in the PII that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

62. Data breaches such as the one experienced by Defendant have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, can prepare for, and hopefully can ward off a potential attack.

63. These significant increases in attacks to companies, and attendant risk of future attacks, is widely known to the public and to anyone in that industry, including Defendant.

64. Moreover, there may be a time lag between when harm occurs versus when it is discovered, and also between when PII is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

65. It is incorrect to assume that reimbursing a victim for a financial loss due to fraud makes that individual whole again. Like the GAO's study, the Department of Justice's Bureau of Justice Statistics ("BJS") found that "among victims who had personal information used for fraudulent purposes, about a third (32%) spent a month or more resolving problems."[13] In fact, the

---

[13] Erika Harrell, *Victims of Identity Theft, 2014*, U.S. DEP'T OF JUSTICE (Sept. 2015), https://bjs.ojp.gov/content/pub/pdf/vit14.pdf (revised Nov. 13, 2017).

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

BJS reported, "resolving the problems caused by identity theft [could] take more than a year for some victims."[14]

66. As the fraudulent activity resulting from the Data Breach may not come to light for years, Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

***Defendant Failed to Comply with FTC Guidelines.***

67. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

68. In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal consumer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[15]

---

[14] *Id.*

[15] *Protecting Personal Information: A Guide for Business*, FED. TRADE COMM'N (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

69. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.

70. The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

71. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect consumer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions clarify the measures businesses take to meet their data security obligations.

72. Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiff's and Class Members' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

***Defendant Failed to Comply with Industry Standards.***

73. To prevent and detect unauthorized cyber-attacks, Defendant could and should have implemented, as recommended by the United States Government, the following measures:

- Implement an awareness and training program. Because end users are targets, employees and individuals should be aware of the threat of ransomware and how it is delivered.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

- Enable strong spam filters to prevent phishing emails from reaching the end users and authenticate inbound email using technologies like Sender Policy Framework (SPF), Domain Message Authentication Reporting and Conformance (DMARC), and DomainKeys Identified Mail (DKIM) to prevent email spoofing.

- Scan all incoming and outgoing emails to detect threats and filter executable files from reaching end users.

- Configure firewalls to block access to known malicious IP addresses.

- Patch operating systems, software, and firmware on devices. Consider using a centralized patch management system.

- Set anti-virus and anti-malware programs to conduct regular scans automatically.

- Manage the use of privileged accounts based on the principle of least privilege: no users should be assigned administrative access unless absolutely needed; and those with a need for administrator accounts should only use them when necessary.

- Configure access controls—including file, directory, and network share permissions—with at least privilege in mind. If a user only needs to read specific files, the user should not have written access to those files, directories, or shares.

- Disable macro scripts from office files transmitted via email. Consider using Office Viewer software to open Microsoft Office files transmitted via email instead of full office suite applications.

- Implement Software Restriction Policies (SRP) or other controls to prevent programs from executing from common ransomware locations, such as temporary folders supporting popular Internet browsers or compression/decompression programs, including the AppData/LocalAppData folder.

- Consider disabling Remote Desktop protocol (RDP) if it is not being used.

- Use application whitelisting, which only allows systems to execute programs known and permitted by security policy.

- Execute operating system environments or specific programs in a virtualized environment

- Categorize data based on organizational value and implement physical and logical separation of networks and data for different organizational units.[16]

[16] *Id.* at 3–4.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

74. To prevent and detect cyber-attacks, including the cyber-attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks….

- **Use caution with links and when entering website addresses**. Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the Internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net) ….

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe**. Check a website's security to ensure the information you submit is encrypted before you provide it….

- **Verify email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters—and keep them updated—to reduce malicious network

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
725-235-9750
lasvegas@stranchlaw.com
SJG STRANCH, JENNINGS & GARVEY PLLC

traffic….[17]

75. To prevent and detect cyber-attacks, including the cyber-attack that resulted in the Data Breach, Defendant could and should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team, the following measures:

**Secure Internet-facing assets**

- Apply latest security updates
- Use threat and vulnerability management
- Perform regular audit; remove privileged credentials;

**Thoroughly investigate and remediate alerts**

- Prioritize and treat commodity malware infections as potential full compromise;

**Include IT Pros in security discussions**

- Ensure collaboration among [security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

**Build credential hygiene**

- Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords

**Apply principle of least-privilege**

- Monitor for adversarial activities
- Hunt for brute force attempts
- Monitor for cleanup of Event Logs
- Analyze logon events

**Harden infrastructure**

- Use Windows Defender Firewall
- Enable tamper protection
- Enable cloud-delivered protection

---

[17] *Protecting Against Ransomware*, CYBERSECURITY & INFRASTRUCTURE SEC. AGENCY (April 11, 2019), https://www.cisa.gov/news-events/news/protecting-against-ransomware (revised Sept. 2, 2021).

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

- Turn on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].[18]

76. Given that Defendant was storing the PII of Plaintiff and Class Members, Defendant could and should have implemented all of the above measures to prevent and detect cyberattacks.

77. Defendant failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR-DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

78. The foregoing frameworks are existing and applicable industry standards in the industry, and Defendant failed to comply with these accepted standards, thereby opening the door to and causing the Data Breach.

***The Data Breach Caused Plaintiff and the Class Members Injury and Damages***

79. Plaintiff and members of the proposed Class have suffered injury and damages from the unauthorized disclosure and misuse of their PII disclosed in the Data Breach that can be directly traced to Defendant, that has occurred, is ongoing, and/or will imminently occur.

---

[18] *Human-Operated Ransomware Attacks: A Preventable Disaster*, MICROSOFT THREAT INTELLIGENCE (Mar. 5, 2020), https://www.microsoft.com/security/blog/2020/03/05/human-operated-ransomware-attacks-a-preventable-disaster.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

80. Data Breaches such as the one experienced by Plaintiff and Class Members are especially problematic because of the disruption they cause to the daily lives of victims affected by the attack.

81. As stated prior, on information and belief, in the Data Breach, cybercriminals were able to access the Plaintiff's and the proposed Class Members' PII, which is now being used or will imminently be used for fraudulent purposes and/or has been sold for such purposes and posted on the Dark Web for sale, causing widespread injury and damages.

82. Once an individual's PII is for sale and access on the dark web, cybercriminals are able to use the stolen and compromised to gather and steal even more information.[19]

83. The ramifications of Defendant's failure to keep Plaintiff's and the Class's PII secure are severe. Identity theft occurs when someone uses another's personal and financial information such as that person's name, account number, Social Security number, driver's license number, date of birth, or other information, such as addresses, without permission, to commit fraud or other crimes.

84. Because Defendant failed to prevent the Data Breach, Plaintiff and the proposed Class Members have suffered, will imminently suffer, and will continue to suffer injury-in-fact and damages, including but not limited to:

a. The loss of the opportunity to control how PII is used;

b. Unauthorized use of stolen PII;

c. Dramatic increase in spam telephone calls;

---

[19] Ryan Toohil, *What do Hackers do with Stolen Information*, AURA, (September 5, 2023) https://www.aura.com/learn/what-do-hackers-do-with-stolen-information.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

d. Emotional distress;

e. The compromise and continuing publication of their PII;

f. Out-of-pocket expenses associated with the prevention, detection, recovery, and remediation from identity theft or fraud, and for necessary credit monitoring and identity theft protection;

g. Lost opportunity costs and lost wages associated with the time and effort expended addressing and trying to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud;

h. The diminution in value of their PII;

i. Delay in receipt of tax refund monies; and,

j. The continued risk to their PII, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII and PHI in its possession.

***The Data Breach Caused Plaintiff and the Class Increased Risk of Identity Theft***

85. Furthermore, the Data Breach has placed Plaintiff and the proposed Class Members at an increased risk of fraud and identity theft.

86. Plaintiff and Class Members are at a heightened risk of identity theft for years to come, especially because Defendant's failures resulted in Plaintiff's and Class Members' PII falling into the hands of identity thieves.

87. The unencrypted PII of Class Members has already or will end up for sale on the dark web because that is the *modus operandi* of hackers. Indeed, when these criminals do not post the data to the dark web, it is usually at least sold on private Telegram channels to even further identity thieves who purchase the PII for the express purpose of conducting financial fraud and identity theft operations.

88. Further, as discussed above, the standard operating procedure for cybercriminals is to use some data, like the PII here, to access "Fullz packages" of that person to gain access to the full suite of additional PII that those cybercriminals have access through other means. Using this

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

technique, identity thieves piece together full pictures of victim's information to perpetrate even more types of attacks.

89. There are myriad dangers which affect victims of identity theft, including: cybercriminals opening new financial accounts, credit cards, and loans in victim's names; victim's losing health care benefits (medical identity theft); hackers taking over email and other accounts; time and effort to repair credit scores; losing home due to mortgage and deed fraud; theft of tax refunds; hackers posting embarrassing posts on victim's social media accounts; victims spending large amounts of time and money to recover their identities; experiencing psychological harm and emotional distress; victims becoming further victimized by repeat instances of identity theft and fraud; cybercriminals committing crimes in victim's names; victims' personal data circulating the Dark Web forever; victims receiving increased spam telephone calls and emails; victims' children or elderly parents having their identities stolen.

90. The FTC recommends that identity theft victims take several costly steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert (consider an extended fraud alert that lasts for 7 years if someone steals their identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, seeking a credit freeze, and correcting their credit reports.[20]

91. Identity thieves use stolen PII such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

92. According to the Social Security Administration, each time an individual's Social Security number is compromised, "the potential for a thief to illegitimately gain access to bank

[20] *What To Do Right Away*, FTC (2024), https://www.identitytheft.gov/Steps.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

accounts, credit cards, driving records, tax and employment histories and other private information increases."[21] Moreover, "[b]ecause many organizations still use SSNs as the primary identifier, exposure to identity theft and fraud remains."[22]

93. The Social Security Administration stresses that the loss of an individual's Social Security number, as experienced by Plaintiff and some Class Members, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[23]

94. In fact, "[a] stolen Social Security number is one of the leading causes of identity theft and can threaten your financial health."[24] "Someone who has your SSN can use it to

---

[21] *See Avoid Identity Theft*, SOC. SEC. ADMIN., https://www.ssa.gov/phila/ProtectingSSNs.htm#:~:text=An%20organization's%20collection%20and%20use,and%20other%20private%20information%20increases (last visited Oct. 1, 2025).

[22] *Id.*

[23] *Identity Theft and Your Social Security Number*, SOC. SEC. ADMIN. *available at*: https://www.ssa.gov/pubs/EN-05-10064.pdf

[24] *See How to Protect Yourself from Social Security Number Identity Theft*, EQUIFAX, https://www.equifax.com/personal/education/identity-theft/articles/-/learn/social-security-number-identity-theft/ (last visited Oct. 1, 2025).

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

impersonate you, obtain credit and open bank accounts, apply for jobs, steal your tax refunds, get medical treatment, and steal your government benefits."[25]

95. Identity thieves may obtain a job using the victim's Social Security number, rent a house or receive medical services in the victim's name, and may even give the victim's PII to police during an arrest—resulting in an arrest warrant being issued in the victim's name. That can be even more problematic and difficult to remedy for someone who already has a criminal record.

96. Such fraud may go undetected until debt collection calls commence months, or even years later. Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity. Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security Number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

97. It is no easy task to change or cancel a stolen Social Security number. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

98. Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link

---

[25] *See* Julia Kagan, *What is a SSN? What to Know About Social Security Numbers*, INVESTOPEDIA (Sept. 2, 2024) https://www.investopedia.com/terms/s/ssn.asp.

3100 W. Charleston Blvd., #208 Las Vegas, NV 89102 SJG 725-235-9750 lasvegas@stranchlaw.com STRANCH, JENNINGS & GARVEY PLLC

the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[26]

99. The California state government warns consumers that: "[o]riginally, your Social Security number (SSN) was a way for the government to track your earnings and pay you retirement benefits. But over the years, it has become much more than that. It is the key to a lot of your personal information. With your name and SSN, an identity thief could open new credit and bank accounts, rent an apartment, or even get a job."[27]

100. Further, according to the Identity Theft Resource Center's 2021 Consumer Aftermath Report, identity theft victims suffer "staggering" emotional tolls: "For example, nearly 30% of victims have been the victim of a previous identity crime; an all-time high number of victims say they have contemplated suicide. Thirty-three percent reported not having enough money to pay for food and utilities, while 14% were evicted because they couldn't pay rent or their mortgage. Fifty-four percent reported feelings of being violated."

101. What's more, theft of PII is also gravely serious outside of the traditional risks of identity theft. In the last two decades, as more and more of our lives become interconnected through the lens of massively complex cloud computing, PII are valuable property rights.

---

[26] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft.

[27] *See Your Social Security Number: Controlling the Key to Identity Theft*, CAL. DEPT. JUST. https://oag.ca.gov/idtheft/facts/your-ssn (last visited Oct. 1, 2025).

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

102. PII are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black-market" for years.

103. Where the most PII belonging to Plaintiff and Class Members was accessible from Defendant's network, there is a strong probability that entire batches of stolen information have been dumped on the black market and are yet to be dumped on the black market, meaning Plaintiff and the Class Members are at an increased risk of fraud and identity theft for many years into the future.

104. Further, there may be a substantial time lag—measured in years—between when harm occurs versus when it is discovered, and between when PII and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which studied data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[28]

105. Thus, Plaintiff and the Class Members must vigilantly monitor their financial and credit accounts for many years to come.

106. Accordingly, the Data Breach has caused Plaintiff and the proposed Class Members a greatly increased risk of identity theft and fraud, in addition to the other injuries and damages set forth herein.

107. Defendant knew or should have known of these harms which would be caused by the Data Breach they permitted to occur and strengthened its data systems accordingly.

---

[28] *See* GAO Report, at p. 29.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

***Loss of Time to Mitigate Risk of Identity Theft and Fraud***

108. Because of the recognized risk of identity theft, when a data breach occurs, and an individual is notified by a company that his or her PII was compromised, as in this Data Breach, the reasonable person is expected to take steps and spend time to address the dangerous situation, learn about the breach, and otherwise mitigate the risk of becoming a victim of identity theft of fraud. Failure to spend time taking steps to review accounts or credit reports could expose the individual to greater financial harm and Defendant arguing that the individual failed to mitigate damages.

109. The need to spend time mitigating the risk of harm is especially important in cases like this where Plaintiff's and Class Members' Social Security numbers or other government identification are affected.

110. By spending this time, data breach Plaintiff was not manufacturing her own harm, they were taking necessary steps at Defendant's direction and because the Data Breach included their Social Security numbers.

111. Plaintiff and Class Members have spent, and will spend additional time in the future, on a variety of prudent actions to remedy the harms they have or may experience because of the Data Breach, such as contacting credit bureaus to place freezes on their accounts; changing passwords and re-securing their own computer networks; and checking their financial accounts for any indication of fraudulent activity, which may take years to detect.

112. These efforts are consistent with the U.S. Government Accountability Office that released a report in 2007 regarding data breaches ("GAO Report") in which it noted that victims

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

of identity theft will face "substantial costs and time to repair the damage to her good name and credit record."[29]

***Diminution in Value of PII***

113. PII are valuable property rights.[30] Their value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk-to-reward analysis illustrates beyond doubt that PII has considerable market value.

114. An active and robust legitimate marketplace for PII exists. In 2019, the data brokering industry was worth roughly $200 billion.[31]

115. In fact, the data marketplace is so sophisticated that consumers can actually sell their non-public information directly to a data broker who in turn aggregates the information and provides it to marketers or app developers.[32]

---

[29] See GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, U.S. GOV'T OFFICE, (June 2007), https://www.gao.gov/new.items/d07737.pdf.

[30] *See, e.g.*, Randall T. Soma et al, *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("Private Information") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *3-4 (2009) ("Private Information, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

[31] David Lazarus, *Shadowy Data Brokers Make the Most of Their Invisibility Cloak*, L.A. TIMES (Nov. 5, 2019), https://www.latimes.com/business/story/2019-11-05/column-data-brokers.

[32] *See e.g.*, https://datacoup.com/ (last visited Oct. 1, 2025).

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

116. Consumers who agree to provide their web browsing history to the Nielsen Corporation can receive up to $50.00 a year.[33]

117. Conversely, sensitive PII can sell for as much as $363 per record on the dark web according to the Infosec Institute.[34]

118. As a result of the Data Breach, Plaintiff's and Class Members' PII, which has an inherent market value in both legitimate and dark markets, has been damaged and diminished by its compromise and unauthorized release. However, this transfer of value occurred without any consideration paid to Plaintiff or Class Members for their property, resulting in an economic loss. Moreover, PII is now readily available, and the rarity of the Data has been lost, thereby causing additional loss of value.

***The Future Cost of Credit and Identity Theft Monitoring Is Reasonable and Necessary***

119. Based on the value of the information stolen, the data either has or will be sold to cybercriminals whose mission it is to perpetrate identity theft and fraud. Even if the data is not posted online, these data are ordinarily sold and transferred through private Telegram channels wherein thousands of cybercriminals participate in a market for such data so that they can misuse it and earn money from financial fraud and identity theft of data breach victims.

120. Such fraud may go undetected for years; consequently, Plaintiff and Class Members are at a present and continuous risk of fraud and identity theft for many years into the future.

---

[33] *Frequently Asked Questions*, NIELSON COMPUT. & MOBIL PANEL, https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited Oct. 1, 2025).

[34] *See* Ashiq Ja, *Hackers Selling Healthcare Data in the Black Market*, InfoSec (July 27, 2015), https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

121. The retail cost of credit monitoring and identity theft monitoring can cost $200 or more per year per Class Member. This is a reasonable and necessary cost to monitor and protect Class Members from the risk of identity theft that arose from the Data Breach. This is a future cost for a minimum of seven years that Plaintiff and Class Members would not need to bear but for Defendant's failure to safeguard their PII.

***Plaintiff's Experience***

122. Plaintiff is a former employee of Defendant, which obtained Plaintiff's PII as a requirement and condition of employment, from in and around April 2023 to November 2023.

123. At the time of the Data Breach, Defendant maintained Plaintiff's PII in its system.

124. Plaintiff received the Notice letter, by U.S. mail, directly from Defendant, which was dated Sept. 24, 2025. According to the Notice Letter, Plaintiff's PII was improperly accessed and obtained by unauthorized third parties including: name, date of birth, and Social Security Number.

125. Plaintiff is very careful about sharing her sensitive PII. Plaintiff stores any documents containing her PII in a safe and secure location. She has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Plaintiff would not have entrusted her PII to Defendant had she known of Defendant's lax data security policies.

126. In order to obtain employment from Defendant, Plaintiff was required to provide her PII to Defendant, including among other things, her name, contact information, date of birth, Social Security Number, financial information, and driver's license number.

127. As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including researching and verifying the legitimacy of the Data Breach. Plaintiff has spent significant time dealing with the Data Breach—roughly four to five hours of

3100 W. Charleston Blvd., #208 Las Vegas, NV 89102 SJG 725-235-9750 lasvegas@stranchlaw.com STRANCH, JENNINGS & GARVEY PLLC

her valuable time Plaintiff otherwise would have spent on other activities, including but not limited to work and/or recreation. This time has been lost forever and cannot be recaptured.

128. As a result of the Data Breach, Plaintiff made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, and reviewing credit reports and financial account statements for any indications of actual or attempted identity theft or fraud. Plaintiff monitors her PII multiple times a week and has already spent significant time dealing with the Data Breach, valuable time Plaintiff otherwise would have spent on other activities.

129. Plaintiff suffered actual injury from having her PII compromised as a result of the Data Breach including, but not limited to: (i) invasion of privacy; (ii) theft of her PII; (iii) lost or diminished value of PII; (iv) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (v) loss of benefit of the bargain; (vi) lost opportunity costs associated with attempting to mitigate the actual consequences of the Data Breach; (vii) statutory damages; (viii) nominal damages; and (ix) the continued and certainly increased risk to her PII, which: (a) remains unencrypted and available for unauthorized third parties to access and abuse; and (b) remains backed up in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect the PII.

130. Plaintiff suffered actual injury from the dramatic increase in spam, suggesting that her PII has been stolen and is now in the hands of cybercriminals.

131. The Data Breach has caused Plaintiff to suffer fear, anxiety, and stress, which has been compounded by the fact that Defendant has still not fully informed her of key details about the Data Breach's occurrence.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG STRANCH, JENNINGS & GARVEY PLLC
725-235-9750
lasvegas@stranchlaw.com

132. As a result of the Data Breach, Plaintiff is at a present risk and will continue to be at increased risk of identity theft and fraud for years to come.

133. Plaintiff anticipates spending considerable time and money on an ongoing basis to try to mitigate and address harms caused by the Data Breach.

134. Plaintiff has a continuing interest in ensuring that her PII, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

135. Plaintiff greatly values her privacy, and would not have provided her PII, undertaken the employment that she did if she had known that her PII would be maintained using inadequate data security systems.

**CLASS ALLEGATIONS**

136. Pursuant to the Federal Rules of Civil Procedure 23(b)(1), 23(b)(3), Plaintiff brings this action individually and on behalf of all members of the proposed class defined as:

137. The Class that Plaintiff seeks to represent is defined as follows:

> All individuals residing in the United States whose PII was compromised in the Data Breach on or around September 2025 (the "Class").

138. Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant have a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

139. This proposed class definition is based on the information available to Plaintiff at this time. Plaintiff may modify the class definition in an amended pleading or when she moves for

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

class certification, as necessary to account for any newly learned or changed facts as the situation develops and discovery gets underway.

140. Plaintiff reserves the right to amend the definitions of the Class or add a Class or Subclass if further information and discovery indicate that the definitions of the Class should be narrowed, expanded, or otherwise modified.

141. The proposed Class meets the criteria certification under Federal Rule of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3).

142. Numerosity: The Class is so numerous that joinder of all Members is impracticable. The identity of these individuals are within the exclusive knowledge of and can be ascertained only by resort to Defendant's records. The exact number of Class Members is unknown to Plaintiff now, but Defendant has the administrative capability through its computer systems and other records to identify all Class Members, and such specific information is not otherwise available to Plaintiff.

143. Commonality and Predominance: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class that predominate over questions which may affect individual Class members, including the following:

a. Whether and to what extent Defendant had a duty to protect the PII of Plaintiff and Class Members;

b. Whether Defendant had respective duties not to disclose the PII of Plaintiff and Class Members to unauthorized third parties;

c. Whether Defendant had respective duties not to use the PII of Plaintiff and Class Members for non-business purposes;

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

d. Whether Defendant failed to adequately safeguard the PII of Plaintiff and Class Members;

e. Whether and when Defendant actually learned of the Data Breach;

f. Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII had been compromised;

g. Whether Defendant violated the law by failing to promptly notify Plaintiff and Class Members that their PII had been compromised;

h. Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

i. Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

j. Whether Defendant was unjustly enriched

k. Whether Plaintiff and Class Members are entitled to actual damages, statutory damages, and/or nominal damages as a result of Defendant's wrongful conduct;

l. Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

144. <u>Typicality:</u> Plaintiff's claims are typical of those of the other members of the Class because Plaintiff, like every other Class Member, was exposed to virtually identical conduct and now suffers from the same violations of the law as each other member of the Class.

145. <u>Policies Generally Applicable to the Class</u>: This class action is also appropriate for certification because Defendant acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenges of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

146. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the Class Members in that she has no disabling conflicts of interest that would be antagonistic to those of the other Class Members. Plaintiff seeks no relief that is antagonistic or adverse to the Class Members and the infringement of the rights and the damage they have suffered are typical of other Class Members. Plaintiff has retained counsel experienced in complex class action and data breach litigation, and Plaintiff intends to prosecute this action vigorously.

147. Superiority and Manageability: The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain Class Members, who could not individually afford to litigate a complex claim against large corporations, like Defendant. Further, even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a. The unnamed Class Members are unlikely to have an interest in individually controlling the prosecution of separate actions;

b. Concentrating the litigation of the claims in one forum is desirable; Plaintiff anticipate no difficulty in the management of this litigation as a class action; and

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

c. Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

148. The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

149. The litigation of the claims brought herein is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrates that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

150. Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

151. Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the PII of Class Members, Defendant may continue to refuse to provide adequate notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

152. Further, Defendant has acted on grounds that apply generally to the Class as a whole, so that class certification, injunctive relief, and corresponding declaratory relief are appropriate on a class- wide basis.

153. Likewise, particular issues are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a. Whether Defendant failed to timely notify the Plaintiff and the class of the Data Breach;

b. Whether Defendant owed a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, and safeguarding their PII;

c. Whether Defendant's security measures to protect their data systems were reasonable in light of best practices recommended by data security experts;

d. Whether Defendant's failure to institute adequate protective security measures amounted to negligence;

e. Whether Defendant failed to take commercially reasonable steps to safeguard Plaintiff's and Class Members' PII; and Whether adherence to FTC data security recommendations, and measures recommended by data security experts would have reasonably prevented the Data Breach.

154. Finally, all Members of the proposed Class are readily ascertainable. Defendant has access to current and former student names and addresses affected by the Data Breach. Using this information, Class Members can be identified and ascertained for the purpose of providing constitutionally sufficient notice.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

## CAUSES OF ACTION

### COUNT I
### Negligence and Negligence *Per Se*
### (On Behalf of Plaintiff and the Class)

155. Plaintiff re-allege and incorporates by reference all preceding allegations, as if fully set forth herein.

156. Plaintiff brings this claim individually and on behalf of the Class Members.

157. Defendant knowingly collected, came into possession of, and maintained Plaintiff's and Class Members' PII, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

158. Defendant has a duty to have procedures in place to detect and prevent the loss or unauthorized dissemination of Plaintiff's and Class Members' PII.

159. Defendant had, and continues to have, a duty to timely disclose that Plaintiff's and Class Members' PII within their possession was compromised and precisely the types of information that were compromised.

160. Defendant owes a duty of care to Plaintiff and Class Members to provide data security consistent with industry standards, applicable standards of care from statutory authority like Section 5 of the FTC Act, and other requirements discussed herein, and to ensure that their systems and networks, and the personnel responsible for them, adequately protected individuals' PII.

161. Defendant's duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendant and their customers. Defendant is in a position to ensure that their systems were sufficient to protect against the foreseeable risk of harm to Plaintiff and Class Members from a data breach.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

162. Defendant's duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendant is bound by industry standards to protect confidential PII.

163. Defendant has a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices on the part of Defendant. By collecting and storing valuable PII that is routinely targeted by criminals for unauthorized access, Defendant is obligated to act with reasonable care to protect against these foreseeable threats.

164. Defendant breached these duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' PII.

165. The specific negligent acts and omissions committed by Defendant include, but are not limited to, the following:

a. Failing to adopt, implement, and maintain adequate security measures to safeguard Plaintiff's and Class Members' PII;

b. Failing to adequately monitor the security of their networks and systems and to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of consumer information; and

c. Failing to periodically ensure that its computer systems and networks had plans in place to maintain reasonable data security safeguards.

d. Failing to detect the breach at the time it began or within a reasonable time thereafter; and

e. Failing to follow their own privacy policies and practices published to their employees and residents.

166. Further, Defendant's violation of federal statutes and other applicable laws also constitutes negligence *per se*. Specifically, as described herein, Defendant violated the FTCA.

167. Section 5 of the FTC Act, 15 U.S.C. 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

Defendant of failing to use reasonable measures to protect Plaintiff's and Class Members' PII. Various FTC publications and orders also form the basis of Defendant's standard of care.

168. Defendant violated Section 5 of the FTC Act (and similar state statutes) by failing to use reasonable measures to protect Plaintiff's and Class Members' PII and by failing to comply with industry standards.

169. Defendant's conduct was particularly unreasonable given the nature and amount of PII obtained and stored and the foreseeable consequences of a data breach on Defendant's systems.

170. Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and Class Members.

171. Defendant, through their actions and/or omissions, unlawfully breached their duties to Plaintiff and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' PII within Defendant's possession.

172. Defendant, through their actions and/or omissions, unlawfully breached their duties to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent the dissemination of Plaintiff's and Class Members' PII.

173. Defendant, through their actions and/or omissions, unlawfully breached their duty to timely disclose to Plaintiff and Class Members that the PII within Defendant's possession might have been compromised and precisely the type of information compromised.

174. It was foreseeable that Defendant's failure to use reasonable measures to protect Plaintiff's and Class Member's PII would result in injury to Plaintiff and Class Members. Further,

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

the breach of security was reasonably foreseeable given the known high frequency of cyberattacks and data breaches.

175. It was foreseeable that the failure to adequately safeguard Plaintiff's and Class Members' PII would result in injuries to Plaintiff and Class Members.

176. Defendant's breach of duties owed to Plaintiff and Class Members caused Plaintiff's and Class Members' PII to be compromised.

177. But for Defendant's negligent conduct and breach of the above-described duties owed to Plaintiff and Class Members, their PII would not have been compromised.

178. As a result of Defendant's failure to timely notify Plaintiff and Class Members that their PII had been compromised, Plaintiff and Class Members are unable to take the necessary precautions to mitigate damages by preventing future fraud.

179. As a result of Defendant's negligence and negligence *per se*, Plaintiff and Class Members are in danger of imminent harm in that their PII, which is still in the possession of third parties, will be used for fraudulent purposes, and Plaintiff and Class Members have and will suffer damages including: a substantial increase in the likelihood of identity theft; the compromise, publication, and theft of their personal information; loss of time and costs associated with the prevention, detection, and recovery from unauthorized use of their personal information; the continued risk to their personal information; future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the personal information compromised as a result of the Data Breach; anxiety, stress, sleep disruption, fear, and frustration arising from loss of privacy; and overpayment for the services or products that were received without adequate data security.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

**COUNT II**
**Breach of Implied Contract**
**(On Behalf of Plaintiff and the Class)**

180. Plaintiff realleges all previous paragraphs as if fully set forth below.

181. Plaintiff and the Class were required to deliver their PII to Defendant as part of the process of obtaining treatment and services provided by Defendant. Further, Plaintiff and the Class paid money, or money was paid on their behalf, in exchange for services.

182. Defendant solicited, offered, and invited Plaintiff and Class members to provide their PII as part of Defendant's regular business practices. Plaintiff and Class Member's accepted Defendant's offer and provided their PII to Defendant.

183. Plaintiff and Class Members entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class Members if and when their data had been breached and compromised. Each such contractual relationship imposed on Defendant an implied covenant of good faith and fair dealing by which Defendant was required to perform its obligations and manage Plaintiff's and Class Members' data in a manner which comported with the reasonable expectations of privacy and protection attendant to entrusting such data to Defendant.

184. In providing their PII, Plaintiff and Class Members entered into an implied contract with Defendant. Pursuant to these implied contracts, Plaintiff and the Class understood that Defendant, in receiving such data, (1) provide services to Plaintiff and Class Members, (2) take reasonable measures to safeguard Plaintiff's and the other Class Members' PII, (3) provide prompt and adequate notice of all unauthorized access and/or theft of their PII, and (4) protect Plaintiff's and Class Members' PII in compliance with federal and state laws and regulations and industry standards.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
725-235-9750
lasvegas@stranchlaw.com
SJG
STRANCH, JENNINGS & GARVEY PLLC

185. In delivering their PII to Defendant, Plaintiff and Class Members intended and understood that Defendant would adequately safeguard that data.

186. Plaintiff and the Class Members would not have entrusted their PII to Defendant in the absence of such an implied contract.

187. Plaintiff and Class Members reasonably understood that a portion of the payment they provided to Defendant would be used to pay for adequate security measures.

188. Defendant accepted possession of Plaintiff's and Class Members' PII.

189. Had Defendant disclosed to Plaintiff and Class Members that Defendant did not have adequate computer systems and security practices to secure employees' and customers' PII, Plaintiff and members of the Class would not have provided their PII to Defendant.

190. Defendant recognized that employees' and customers' PII is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and Class Members.

191. Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

192. Defendant breached the implied contract with Plaintiff and Class Members by failing to take reasonable measures to safeguard its data.

193. Defendant breached the implied contract with Plaintiff and Class Members by failing to promptly notify them of the access to and exfiltration of their PII.

194. As a direct and proximate result of the breach of the contractual duties, Plaintiff and Class Members have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiff and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiff's and Class Members' PII; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity;

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG STRANCH, JENNINGS & GARVEY PLLC
725-235-9750
lasvegas@stranchlaw.com

(d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their PII; (g) the diminution in the value of the services bargained for as Plaintiff and Class Members were deprived of the data protection and security that Defendant promised when Plaintiff and the proposed class entrusted Defendant with their PII; and (h) the continued and substantial risk to Plaintiff's and Class Members' PII, which remains in the Defendant's possession with inadequate measures to protect Plaintiff's and Class Members' PII.

**COUNT III**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

195. Plaintiff re-allege and incorporate by reference all preceding allegations, as if fully set forth herein.

196. Upon information and belief, Defendant funds its data security measures entirely from its general revenues, from payments made by and/or on behalf of its customers, including Class members, in exchange for services, for which Defendant collected and maintained Plaintiff's and Class Members' PII

197. Further, Plaintiff and Class Members who are or were employees of Defendant conferred a monetary benefit upon Defendant in the form of their labor and services with the understanding that Defendant would pay the administrative costs of reasonable data privacy and security practices and procedures from the revenue Defendant derived therefrom. In exchange, Plaintiff and Class Members should have received adequate protection and data security for such PII held by Defendant. Defendant understood this benefit.

198. As such, Plaintiff and Class Members conferred a monetary benefit on Defendant, by providing Defendant with their valuable PII as a portion of value and monies derived from

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

Plaintiff and Class Members is to be used to provide a reasonable level of data security, and the amount of the portion of each made that is allocated to data security is known to Defendant.

199. Defendant enriched themselves by saving the costs they reasonably should have expended on data security measures to secure Plaintiff's and Class Members' PII.

200. Instead of providing a reasonable level of security that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiff and Class Members by utilizing cheaper, ineffective security measures. Plaintiff and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

201. Under the principles of equity and good conscience, Defendant should not be permitted to retain the monetary value of the benefit belonging to Plaintiff and Class Members, because Defendant's failed to implement appropriate data management and security measures that are mandated by industry standards.

202. Defendant acquired the monetary benefit and PII through inequitable means in that they failed to disclose the inadequate security practices previously alleged.

203. If Plaintiff and Class Members knew that Defendant had not secured their PII they would not have agreed to provide their PII to Defendant.

204. Plaintiff and Class Members have no adequate remedy at law.

205. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity how their PII is used; (iii) the compromise, publication, and/or theft of their PII; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, and/or unauthorized use of their PII; (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG STRANCH, JENNINGS & GARVEY PLLC
725-235-9750
lasvegas@stranchlaw.com

future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from identity theft; (vi) the continued risk to their PII, which remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect PII in their continued possession and (vii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII compromised as a result of the Data Breach for the remainder of the lives of Plaintiff and Class Members.

206. As a direct and proximate result of Defendant's conduct, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm.

207. Defendant should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds they unjustly received from them.

**COUNT IV**
**<u>Invasion of Privacy—Intrusion Upon Seclusion</u>**
**(On Behalf of Plaintiff and the Class)**

208. Plaintiff realleges all previous paragraphs as if fully set forth below.

209. Plaintiff and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

210. Plaintiff and Class Members successfully took reasonable and appropriate steps to keep their PII confidential from the public.

211. Defendant owed a duty to its customers and others, to keep this information confidential.

212. The unauthorized acquisition (i.e., theft) by a third party of Plaintiff's and Class Members' PII is highly offensive to a reasonable person.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
725-235-9750
lasvegas@stranchlaw.com
SJG
STRANCH, JENNINGS & GARVEY PLLC

213. The intrusion was into a place or thing which was private and entitled to be private. The Class's sensitive and confidential information was disclosed to Defendant in, but they did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiff and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

214. The Data Breach constitutes an intentional interference with Plaintiff's and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

215. Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

216. Defendant acted with a knowing state of mind when it failed to notify Plaintiff and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

217. By intentionally failing to keep Plaintiff's and Class Members' PII safe, and by intentionally misusing and/or disclosing said information to unauthorized parties for unauthorized use, Defendant intentionally invaded Plaintiff' and Class Members' privacy by:

218. Intentionally and substantially intruding into Plaintiff' and Class Members' private affairs in a manner that identifies Plaintiff and Class Members and that would be highly offensive and objectionable to an ordinary person;

219. Intentionally publicizing private facts about Plaintiff and Class Members, which is highly offensive and objectionable to an ordinary person; and

220. Intentionally causing anguish or suffering to Plaintiff and Class Members.

221. As the Restatement explains, as used throughout the Restatement of Torts, intent "has reference to the consequences of an act rather than the act itself." Restatement (Second) of

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

Torts § 8A, cmt. A (1964). "Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from her act, and still goes ahead, she is treated by the law as if she had in fact desired to produce the result." Id. cmt. B.

222. Indeed, given the foreseeability of the harms inherent in data breaches and the ubiquitous nature of data breaches, Defendant was substantially certain that its failure to implement reasonable cybersecurity standards would lead to an invasion of Plaintiff's privacy.

223. Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiff and the Class.

224. As a proximate result of Defendant's acts and omissions, the PII of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiff and the Class to suffer damages.

225. Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiff and the Class because their PII are still maintained by Defendant with its inadequate cybersecurity system and policies.

226. Plaintiff and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII of Plaintiff and the Class.

227. In addition to injunctive relief, Plaintiff, on behalf of herself and the other members of the Class, also seeks compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

**COUNT V**
**Violation of the Nevada Consumer Fraud Act**
**Nev. Rev. Stat. § 41.600**
**(On Behalf of Plaintiff and the Class)**

228. Plaintiff restates and realleges all proceeding factual allegations above as if fully set forth herein.

229. The Nevada Consumer Fraud Act, Nev. Rev. Stat. § 41.600 states in relevant part: "An action may be brough by any person who is a victim of consumer fraud."

230. In turn, Nev. Rev. Stat. § 598.0923(2) provides that "[a] person engages in a 'deceptive trade practice' when in the course of his or her business or occupation he or she knowingly . . . [f]ails to disclose a material fact in connection with the sale or lease of goods or services." *Id.* Boyd violated this provision because it failed to disclose the material fact that its data security measures were inadequate to reasonably safeguard its employees' and customers' PII. This is true because, among other things, Boyd was aware of the risks of cyberattacks such as the Data Breach. Boyd knew or should have known that that its data security measures were insufficient to guard against attacks such as the Data Breach. Boyd had knowledge of the facts that constituted the omission. Boyd could have and should have made a proper disclosure prior to providing employment to its employees and/or services to customers by any other means reasonably calculated to inform employees or customers of its inadequate data security measures.

231. Second, Boyd violated Section 5 of the FTC Act, as alleged above. Boyd knew or should have known that its data security measures were inadequate, violated Section 5 of the FTC Act and failed to adhere to the FTC's data security guidance. This is true because Boyd was well aware that the casino industry is a frequent target of cyberattacks such as the Data Breach and the FTC has recommended various data security measures that companies such as Defendant could have implemented to mitigate the risk of a Data Breach. Boyd chose not to follow such guidance and knew or should have known that its data security measures were inadequate to guard against

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

cyberattacks such as the Data Breach. Boyd had knowledge of the facts that constituted the violation. Boyd's violation of Section 5 of the FTC Act serves as a separate actional basis for purposes of violating Nev. Rev. Stat. § 598.0923(3).

232. Boyd engages in an unfair practice by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to Plaintiff and Class Members.

233. Plaintiff and members of the Class were denied a benefit conferred on them by the Nevada legislature.

234. As a direct and proximate result of the foregoing, Plaintiff and Class Members have suffered injuries including, but not limited to actual damages, and in being denied a benefit conferred on them by the Nevada Legislature.

235. As a result of these violations, Plaintiff and Class Members are entitled to an award of actual damages, equitable injunctive relief requiring Defendant to implement adequate data security measures, as well as an award of reasonable attorneys' and costs. Nev. Rev. Stat. § 41.600(3)

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of herself and Class Members, requests judgment against Defendant and that the Court grants the following:

A. For an Order certifying the Class, and appointing Plaintiff and their Counsel to represent the Class;

B. For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of the PII of Plaintiff and Class Members;

C. For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

Class Members, including but not limited to an order:

i. prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

ii. requiring Defendant to protect, including through encryption, all data collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

iii. requiring Defendant to delete, destroy, and purge the personal identifying information of Plaintiff and Class Members unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Plaintiff and Class Members;

iv. requiring Defendant to provide out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII for Plaintiff's and Class Members' respective lifetimes;

v. requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of the PII of Plaintiff and Class Members;

vi. prohibiting Defendant from maintaining the PII of Plaintiff and Class Members on a cloud-based database;

vii. requiring Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG 725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

viii. requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring;

ix. requiring Defendant to audit, test, and train its security personnel regarding any new or modified procedures;

x. requiring Defendant to segment data by, among other things, creating firewalls and controls so that if one area of Defendant's network is compromised, hackers cannot gain access to portions of Defendant's systems;

xi. requiring Defendant to conduct regular database scanning and securing checks;

xii. requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling personal identifying information, as well as protecting the personal identifying information of Plaintiff and Class Members;

xiii. requiring Defendant to routinely and continually conduct internal training and education, and on an annual basis to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

xiv. requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs, and systems for protecting personal identifying information;

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
SJG
725-235-9750
lasvegas@stranchlaw.com
STRANCH, JENNINGS & GARVEY PLLC

xv. requiring Defendant to implement, maintain, regularly review, and revise as necessary a threat management program designed to appropriately monitor Defendant's information networks for threats, both internal and external, and assess whether monitoring tools are appropriately configured, tested, and updated;

xvi. requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect herself;

xvii. requiring Defendant to implement logging and monitoring programs sufficient to track traffic to and from Defendant's servers; and

xviii. for a period of 10 years, appointing a qualified and independent third-party assessor to conduct a SOC 2 Type 2 attestation on an annual basis to evaluate Defendant's compliance with the terms of the Court's final judgment, to provide such report to the Court and to counsel for the class, and to report any deficiencies with compliance of the Court's final judgment;

D. For an award of damages, including actual, nominal, statutory, consequential, and punitive damages, as allowed by law in an amount to be determined, including compensation for the time Plaintiff and the Class have had to spend responding to the subject Data Breach at Defendant's direction and because of its failures;

E. For an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

F. For prejudgment interest on all amounts awarded; and

G. Such other and further relief as this Court may deem just and proper.

3100 W. Charleston Blvd., #208
Las Vegas, NV 89102
725-235-9750
lasvegas@stranchlaw.com
SJG STRANCH, JENNINGS & GARVEY PLLC

**JURY TRIAL DEMANDED**

Plaintiff hereby demand a trial by jury on all claims so triable.

Dated: October 1, 2025

Respectfully Submitted,

*/s/ Nathan R. Ring, Esq.*

Nathan R. Ring
Nevada State Bar No. 12078
**STRANCH, JENNINGS & GARVEY, PLLC**
3100 W. Charleston Boulevard, Suite 208
Las Vegas, NV 89102
Telephone: (725) 235-9750
nring@stranchlaw.com

Grayson Wells*
John C. Roberts*
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
(615) 254-8801
gwells@stranchlaw.com
jroberts@stranchlaw.com

*Attorneys for Plaintiff and The Proposed Class*

**Pro Hac Vice application forthcoming*